IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:23-CR-00125-M-BM
Case No. 5:25-CV-00022-M

SHAFTER MANUEL,

     Petitioner,

v.

    ORDER

UNITED STATES OF AMERICA,

     Respondent.

This matter comes before the court on Petitioner's Motions to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [DE 30, 32] and the United States' Motion to Dismiss [DE 44]. The court finds that the record conclusively shows that Petitioner is not entitled to relief; therefore, no hearing is necessary pursuant to 28 U.S.C. § 2255(b). For the following reasons, the United States' motion is granted, and Petitioner's motions are dismissed.

## I.    Background

On February 12, 2021, in the United States District Court for the Eastern District of Virginia, Petitioner pled guilty to conspiring to manufacture, distribute, and possess with the intent to manufacture and distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). *See United States v. Manuel*, Case No. 2:20-CR-00090-JKW-LRL-8, at DE 138 (E.D. Va. Feb. 12, 2021). For that offense, he was sentenced to a 144-month term of imprisonment. *See id.* at DE 253. He was committed to the custody of the Bureau of Prisons and

designated to the Federal Correctional Institution in Butner, North Carolina ("FCI Butner"). DE 23 at ¶ 5.

While serving that sentence, Petitioner was charged by indictment in the Eastern District of North Carolina with knowingly possessing a cell phone, in violation of 18 U.S.C. § 1791(a)(2) and (b)(4). DE 1. On July 25, 2023, he pled guilty without a plea agreement, DE 16, and on December 13, 2023, this court sentenced him to sixty days of imprisonment, to be served consecutively to the sentence imposed in the Eastern District of Virginia. DE 27.

On January 13, 2025, and January 16, 2025, respectively, Petitioner moved to vacate his sentence on the ground that he received ineffective assistance of counsel, in violation of the Sixth Amendment to the United States Constitution. *See generally* DE 30, 32. On July 28, 2025, the United States moved to dismiss the petitions. *See* DE 44. Petitioner responded in opposition. *See* DE 49. In this posture, the pending motions are ripe for review.

## II. Legal Standard

"A federal prisoner, in custody, may collaterally attack his sentence or conviction by moving the district court 'to vacate, set aside, or correct his sentence' pursuant to 28 U.S.C. § 2255." *Umar v. United States*, 161 F.Supp.3d 366, 373 (E.D. Va. 2015) (quoting § 2255(a)). Such relief is appropriate if the court finds that

> the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack.

28 U.S.C. § 2255(b). The petitioner has the burden "to establish by a preponderance of the evidence" the purported basis for relief. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

The Government may respond to a Section 2255 petition by filing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *United States v. Reckmeyer*,

2

900 F.2d 257, 1990 WL 41044, at *4 (4th Cir. Apr. 2, 1990) ("a district court may properly consider a Rule 12(b)(6) challenge to the legal sufficiency of a § 2255 petition"). In such proceedings, "the familiar standards in Rule 12(b)(6) of the Federal Rules of Civil Procedure apply to the government's motion to dismiss." *Walker v. Kelly*, 589 F.3d 127, 138 (4th Cir. 2009). However, the scope of a court's review for a motion to dismiss a habeas petition is broader than the typical civil context because the court may also consider the record from the petitioner's underlying conviction and any exhibits attached to the petition. *See id.* at 139; *McCollough v. Bragg*, No. 5:20-CV-138, 2021 WL 236079, at *3 (D.S.C. Jan. 25, 2021); 28 U.S.C. § 2255(b) (instructing court to review "the files and records of the case").

Considering all such materials in tandem, to survive a motion to dismiss, a § 2255 petition must contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 55 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief is plausible when it contains factual content that "allows the court to draw the reasonable inference" that the petitioner is entitled to the relief requested. *Id.* at 664. In other words, the well-pleaded allegations must "be enough to raise a right to relief above a speculative level.," i.e., allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 at 556. As such, a speculative claim resting upon conclusory allegations without sufficient factual enhancement cannot survive a Rule 12(b)(6) challenge. *Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'") (quoting Fed. R. Civ. P. 8(a)(2)); *Francis v. Giacomelli*, 588 F.3d 186, 194 (4th Cir. 2009) (recognizing that "naked assertions of wrongdoing

3

necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief") (cleaned up).

## III. Discussion

Petitioner advances two ineffective assistance of counsel claims. *See* DE 32 at 5, 7. First, he argues that his counsel should have advised him that by pleading guilty to possessing contraband, in violation of § 1791(a)(2), he would be disqualified from receiving earned-time credit under the First Step Act ("FSA"). *Id.* at 5. Second, he argues that his counsel should have investigated and raised a selective prosecution defense. *Id.* at 7. He alleges that if his counsel had done either of these things, he would not have entered a guilty plea. *Id.* at 5, 7.

The Sixth Amendment to the United States Constitution guarantees the right to the "effective assistance of counsel in criminal cases." *United States v. Cannady*, 63 F.4th 259, 265 (4th Cir. 2023) (citing U.S. Const. amend. VI). To succeed on a claim of ineffective assistance, a defendant must show that (1) "counsel's performance fell below an objective standard of reasonableness;" and (2) "the deficient representation prejudiced the defendant." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). Judicial review of counsel's performance is "highly deferential," and courts "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689). This determination is made by reference to "to professional norms." *Cannady*, 63 F.4th at 265. In cases where a guilty plea has been entered, prejudice is shown if "there is a reasonably probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

A.     First Step Act Credits

First, the court considers Petitioner's claim concerning the loss of earned-time credits. Under the FSA, federal prisons typically receive credit "for every 30 days of successful participation in evidence-based recidivism programming" or other "productive activities." 18 U.S.C. § 3632(d)(4)(A)(i). That credit may "be applied toward time in prerelease custody or supervised release." § 3632(d)(4)(C). But, prisoners are "ineligible to receive time credit" if they are serving a sentence for a disqualifying conviction, which includes possession of contraband as defined by § 1791. § 3632(d)(4)(D)(xxix).

Petitioner alleges that on July 23, 2023, before entering his guilty plea, he spoke with his attorney, James Saunders, and "expressed" that he "was concerned about losing all of [his] First Step credit days because of the indicted charge." DE 32-1 at 3. Mr. Saunders reportedly indicated that he would investigate the matter further. *Id.* Later that month, Petitioner states that Mr. Saunders told him that he could not find any information confirming that he would lose his FSA credit and that from what he had read, if Petitioner did lose his credits, he "should be allowed to earn them back." *Id.* In November 2023, after entering his guilty plea, Petitioner obtained a document from the BOP advising that if an inmate is convicted of new disqualifying offense while in custody, the inmate becomes ineligible for FSA credit for the entire term of incarceration. *Id.* at 4; *see also* DE 32-3 (referenced document) ("[I]f you are convicted for new criminal conduct while serving your sentence, whether your sentence is run concurrently or consecutively, and if the new conviction is for an ineligible offense, the whole term of incarceration becomes ineligible for earning [FSA credits]."). Petitioner alleges he spoke with Mr. Saunders two more times before his sentencing hearing, expressing "great concern" that he would lose his FSA credits. *Id.* at 5. At Petitioner's sentencing hearing, Mr. Saunders raised the issue with the court. In full, he stated:

5

> Right now, what I've been trying to work through with him also is with the First Step Act, he was making some headway into being able to work his time down some more. And it's unclear to us the way that it's being implemented. I'm not sure it's being implemented on a consistent basis. But he thinks that this conviction or this sentence is gonna further hamper his efforts to be able to do those things and work his time down. So he's received considerable repercussions from this already.

DE 34 at 8:19–9:3. Both the court and the United States confirmed that Petitioner would likely lose his FSA credit. *See id.* at 15:5–24 (counsel for the United States advising that "[t]he defendant is correct that he will likely lose the ability to earn [FSA] credits once convicted of the instant charge"); *id.* at 19:13–21 (the court recognizing "the loss of the ability to participate in recidivism reduction programming for credit under the First Step Act").[1] Petitioner did not reference the potential loss of FSA credits during his allocution. *See id.* at 10:13–19. After the court issued a judgment, Petitioner received official notice from the BOP that he was no longer eligible for FSA credit. *See* DE 32-4.

Even taking these allegations at face value, Petitioner has not stated a claim for relief because Mr. Saunders was not required to inform him of the effect his guilty plea would have on his eligibility for FSA credits. A defense attorney's "failure to ascertain and advise his client of the collateral consequences of a guilty plea does not constitute ineffective assistance." *Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008) (cleaned up). "A consequence is collateral when it is uncertain or beyond the direct control of the court." *United States v. Nicholson*, 676 F.3d 376, 381 (4th Cir. 2012) (internal quotations and emphasis omitted). Examples of collateral consequences include the loss of good time and FSA credits. *See May v. United States*, No. 1:17-CR-381-1,

---

[1] In his affidavit, Petitioner asserts that at the sentencing hearing, the court stated that it saw "no reason why Mr. Manuel should not be able to earn FSA credits back." DE 32-1 at 5. That language does not appear in the sentencing transcript. *See generally* DE 34. To the best the court can surmise, Petitioner is referencing the following comment: "And I think you can earn back a significant amount of good time between now and the end of this sentence and get home sooner." *See id.* at 21:20–21. This statement was made in reference to good time credit, not FSA credit.

6

2021 WL 1518381, at *3 (M.D.N.C. Apr. 16, 2021) ("[T]he Bureau of Prisons—not the Court—manages good time credits and its recidivism programs."); *see also Andrews v. United States*, No. 2:22-CR-5, 2024 WL 5147611, at *4 (E.D. Va. Dec. 17, 2024) (treating the loss of FSA credits as a collateral issue); *Johnson v. Puckett*, 930 F.2d 445, 448 n.2 (5th Cir. 1991) ("The effect of a defendant's guilty plea on good time credits is . . . a collateral consequence."); *Reeves v. Floyd*, No. 2:19-CV-13484, 2020 WL 4530444, at *5 (E.D. Mich. Aug. 6, 2020) ("[T]he effect of a defendant's guilty plea on good time credits is also a collateral consequence of a guilty plea[.]"). In accordance with these decisions, the court finds that Petitioner's ineligibility for FSA credits was a collateral consequence of his guilty plea and that Mr. Saunders was not constitutionally ineffective for failing to advice Petitioner on the issue.

This does not end the court's inquiry. While a "failure to advise on a collateral issue" is not an actionable basis for a habeas petition, "gross misadvice on a collateral issue can support an ineffective assistance claim if the issue is material to a defendant's plea decision." *Andrews*, 2024 WL 5147611, at *4 (citing *Strader v. Garrison*, 611 F.2d 61, 65 (4th Cir. 1979) (noting that when a defendant "is grossly misinformed about [a collateral issue] by his lawyer, and relies upon that misinformation, he is deprived of his constitutional right to counsel")).

Here, Petitioner does not claim that he was misinformed by counsel. Still, liberally construing his petition, the court examines Mr. Saunders' alleged statements concerning the FSA to ascertain whether any of them may be properly construed as grossly misleading. Petitioner alleges that Mr. Saunders informed him that he was "still learning more information about the First Step Act" but that from what he had read, he believed that if Petitioner ultimately lost any credits, he "should be allowed to earn them back." DE 32-1 at 3–4. As has already been discussed, a conviction under § 1791(a)(2) disqualifies an individual from FSA credit. *See* §

7

3632(d)(4)(D)(xxix). For two reasons, however, the court finds that these statements were not grossly misleading. First, as alleged, Mr. Saunders expressly acknowledged that he was unfamiliar with the FSA's application to Petitioner's case. DE 32-1 at 3. He allegedly stated that he was "still learning" about the FSA, that he had "not [found] any information," and that he believed Petitioner "should" be able to earn back any lost credits. *Id.* at 3–4. These statements by Mr. Saunders were expressly qualified by his uncertainty on the issue, so in this instance, where Petitioner had already expressed his belief that he would lose his credits, Mr. Saunders' statements were not "gross misadvice." *See Andrews*, 2024 WL 5147611, at *4. Second, Mr. Saunders acknowledged the possibility that Petitioner would lose his FSA credits. *See* DE 32-1 at 3–4 ("He also said . . . from what he found so far, if I do lose any days I should be allowed to earn them back."). Even though Mr. Saunders mistakenly advised that Petitioner might be able to earn them back, *see* § 3632(d)(4)(D), he acknowledged that Petitioner's sole stated concern—the loss of his already-earned FSA credits—was a possibility. For these reasons, Petitioner fails to demonstrate by a preponderance of the evidence that Mr. Saunder's representation was constitutionally deficient. *See Miller*, 261 F.2d at 547.

Alternatively, the court finds that Petitioner has not demonstrated that he was prejudiced by the alleged ineffective assistance. Petitioner states that if his "attorney or the sentencing court would have informed" him that by pleading guilty he would become ineligible for FSA credits, he "would have insisted on going to trial." DE 32-1 at 6–7. This assertion is belied by the record, which is replete with evidence that Petitioner knew that by pleading guilty, he would become ineligible for FSA credits. As alleged, Petitioner voiced his concern about losing his FSA credits with Mr. Saunders twice before entering his guilty plea and two more times before his sentencing hearing. *See id.* at 3–5. At his sentencing hearing, the court, counsel for the United States, and

Mr. Saunders all confirmed that by pleading guilty, Petitioner would become ineligible for FSA credits. *See* DE 34. Considered together, these statements strongly suggest that Petitioner knew the consequences of his guilty plea when he entered it. Indeed, the concerns raised in these proceedings were all raised by Petitioner at every stage of his criminal prosecution. Yet, he pleaded guilty. Petitioner's post hoc assertion about what he would have done does not overcome the weight of the evidence that this court must consider in its "objective inquiry" into the likelihood of prejudice. *See Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007).

Accordingly, the court finds that Petitioner's First Step Act claim fails to state a claim for relief under both of *Strickland*'s prongs. His claim must, therefore, be dismissed.

### B.    Selective Prosecution Claim

Next, the court considers Petitioner's selective prosecution claim. Petitioner argues that Mr. Saunders should have an investigated and raised a selective prosecution defense because he was "intentionally treated differently from similarly situated [individuals,]" and "there [was] no rational basis for the difference in treatment." DE 32 at 7.

"A selective prosecution claim is an 'assertion that the prosecutor . . . brought [a] charge for reasons forbidden by the Constitution.'" *United States v. Venable*, 666 F.3d 893, 900 (4th Cir. 2012) (quoting *United States v. Armstrong*, 517 U.S. 456, 463 (1996)). Forbidden reasons include, for example, the initiation of criminal proceedings "on an unjustifiable standard such as race, religion, or other arbitrary classification." *Armstrong*, 517 U.S. at 464. Naturally, the burden on a defendant seeking to dismiss an indictment on this basis "is high." *Venable*, 666 F.3d at 900. To prove a selective-prosecution claim, a petitioner must "demonstrate that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." *United States v. Armstrong*, 517 U.S. 456, 465 (1996) (quotation omitted). "To make

9

this showing, a defendant must 'establish both (1) that similarly situated individuals . . . were not prosecuted, and (2) that the decision to prosecute was invidious or in bad faith." *Venable*, 666 F.3d at 900 (quoting *United States v. Olvis*, 97 F.3d 739, 743 (4th Cir. 1996)). "Defendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors tat might justify making different prosecutorial decisions with respect to them." *Id.* at 900–01.

The pending petitions contain virtually no information from which the court can assess whether Mr. Saunders should have investigated or raised a selective prosecution defense. Petitioner alleges that he and five other men were prosecuted for possessing cell phones while other inmates who also possessed cell phones only received incident reports. *See* DE 49 at 7. Petitioner further alleges that he informed Mr. Saunders that "the Butner complex is no longer prosecuting cell phone possession cases[.]" *Id.*

When considering these allegations, Mr. Saunders acted reasonably in foregoing further investigation. To merely "obtain discovery" on a selective prosecution theory, Defendant would have been required to "produce some evidence making a credible showing" on both the discriminatory effect and discriminatory intent prongs. *Venable*, 666 F.3d at 900. From Petitioner's factual allegations, he had neither. By his own admission, five other individuals were indicted for possession of contraband; thus, he was not "singled out" for disparate treatment. *See United States v. Greenwood*, 796 F.2d 49, 52 (4th Cir. 1986) (the defendant "must establish . . . that he has been 'singled out' while others similarly situated have not been prosecuted"). Moreover, he has presented no evidence indicating the presence of discriminatory intent. United States Attorney's Offices "retain broad discretion to enforce the Nation's criminal law[,]" and "[a]s a result, the presumption of regularity supports their prosecutorial decisions[.]" *Armstrong*, 517

U.S. at 464 (internal citations and quotations omitted). Numerous "legitimate prosecutorial factors" may have justified the United States' decision to specifically prosecute Petitioner, including

> (1) a prosecutor's decision to offer immunity to an equally culpable defendant because that defendant may choose to cooperate and expose more criminal activity; (2) the strength of the evidence against a particular defendant; (3) the defendant's role in the crime; (4) whether the defendant is being prosecuted by state authorities; (5) the defendant's candor and willingness to plead guilty; (6) the amount of resources required to convict a defendant; (7) the extent of prosecutorial resources; (8) the potential impact of a prosecution on related investigations and prosecutions; and (9) prosecutorial priorities for addressing specific types of illegal conduct.

*See Venable*, 666 F.3d at 901. Petitioner offers no evidence (or makes specific allegations) concerning the inmates he asserts only received incident reports for possessing cell phones. Accordingly, he fails to demonstrate that his prosecution was the result of invidious discrimination or bad faith, and Mr. Saunders was justified in not investigating or raising a selective prosecution defense. *See Venable*, 666 F.3d at 900.

Pursuant to the foregoing, Petitioner's selective prosecution claim fails to state a claim for relief. So, it must be dismissed.

## IV. Conclusion

For these reasons, the United States' Motion to Dismiss [DE 44] is GRANTED, and Petitioner's habeas petitions [DE 30, 32] are DISMISSED. The court finds that reasonable jurists would not find the court's treatment of any of Petitioner's claims debatable or wrong, and none of the issues are adequate to deserve encouragement to proceed further. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The court therefore denies a certificate of appealability. *See* § 2253(c). The

11

Clerk is directed to close this case.

SO ORDERED this __27Th__ day of April, 2026.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

12